UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DIANA SULLIVAN,　　　　　　　　　　　　　　　　　Case No.:

　　　　　　*Plaintiff*,　　　　　　　　　　　　　　　　　　**COMPLAINT**

　　　　　　　-against-

COLUMBUS SQUARE MANAGEMENT and　　　　**PLAINTIFF HEREBY**
JOSEPH CHETRIT, *individually*,　　　　　　　　　　**DEMANDS A TRIAL BY**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**JURY**

　　　　　　*Defendants*.
------------------------------------------------------------------------X

　　　　Plaintiff, Diana Sullivan ("SULLIVAN"), by her attorneys, The Harman Firm, PC., as and for her complaint, alleges as follows:

**NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE**

　　　　1.　　Plaintiff SULLIVAN seeks to recover damages from Defendants Columbus Square Management ("COLUMBUS MGT") and Joseph Chetrit ("CHETRIT") for illegal racial discrimination, including hostile work environment, disparate treatment, and retaliation, both for addressing race discrimination and the hostile work environment and reporting health, safety, and other violations.

　　　　2.　　At all times relevant hereto, Plaintiff SULLIVAN, who is of Puerto Rican origin, was a resident of Dutchess County, State of New York, and was employed as a lease administrator by Defendant COLUMBUS MGT.  Plaintiff SULLIVAN was subjected by her superiors at Defendant COLUMBUS MGT to discrimination and disparate treatment based solely on her race.

3.      At all times relevant hereto, COLUMBUS MGT, a Defendant herein, is a corporation doing business within the state of New York with its principle place of business located at at 792 Columbus Avenue, 1E, New York, NY 10025.

4.      Upon information and belief, at all times relevant hereto, CHETRIT, a Defendant herein, is an individual owner of Defendant COLUMBUS MGT and resides at 55 East 74th Street New York, NY 10021-2734.

5.      CHETRIT is also the individual to whom Plaintiff SULLIVAN directly complained regarding race discrimination, health and safety violations, and other concerns.

6.      Jurisdiction of this Court is proper under 28 USC § 1331 (a) in that claims arise under federal law specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*  The supplemental jurisdiction of the Court is invoked over the local law cause of action pursuant to 28 U.S.C. § 1367.

7.      Venue is properly laid in the Southern District of New York under U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

8.      Plaintiff has filed a charge with the Equal Employment Opportunity Commission, which issued to the Plaintiff a right to sue letter November 21, 2011.

**FACTUAL BACKGROUND**

9.      Plaintiff SULLIVAN was hired as "lease administrator" by Defendant COLUMBUS MGT on August 2, 2010, earning $55,000 per year.  In addition, Plaintiff was also provided medical, dental and vision benefits, as well as a life insurance plan amounting $55,000.

10.     Plaintiff SULLIVAN's job as a lease administrator entailed overseeing all residential and commercial leases for Defendant COLUMBUS MGT.

### **HOSTILE WORK ENVIRONMENT**

11.     During her employment at Defendant COLUMBUS MGT, Plaintiff SULLIVAN was sujected to discrimination, including a hostile work environment and disparate treatment because of her race, in particular by her supervisor Jeffrey Davis' assistant, Sun Yi.

12.     Plaintiff SULLIVAN was subjected to a hostile work environment daily, at all times of the day.  The discrimination she suffered was severe and pervasive, ongoing on a daily basis, and due solely to her race.

13.     For instance, Sun Yi told other employees that Plaintiff SULLIVAN was a "street person," that she was "ghetto," and she complained of being "fucking tired" of Plaintiff SULLIVAN and another employee, Sandra Encarnacion, for speaking Spanish to one another. In fact, Sun Yi even told Yelena Benyayeva, another employee, to keep away from Plaintiff SULLIVAN because she was "ghetto."

14.     Additionally, Hispanic employees such as Plaintiff SULLIVAN and Sandra Encarnacion were deliberately excluded and isolated by other employees and managers from staff events.  For example, Plaintiff SULLIVAN was constantly excluded from Company-sponsored lunches offered by Defendant COLUMBUS MGT solely because she is Hispanic. Indeed, Sun Yi never included Plaintiff SULLIVAN into the mailing list regarding the above-mentioned lunches, even after Plaintiff SULLIVAN addressed the issue with her and others in management.  She would receive only harassing comments in return.

15. As Plaintiff SULLIVAN passed by the conference room, she would see her colleagues enjoy the lunch offered by Defendant COLUMBUS MGT. However, as she was always excluded from such events, Plaintiff SULLIVAN had to go out to buy her own lunch.

16. Plaintiff SULLIVAN complained on several occasions about these harassing comments, discrimination, and disparate treatment but nothing was done by management to rectify the situation.

17. Moreover, Sun Yi constantly subjected Plaintiff SULLIVAN to a hostile work environment solely based on race, by not answering Plaintiff SULLIVAN's "Good mornings" and "Good byes", and by slamming documents onto Plaintiff SULLIVAN's desk. She did not treat others in this manner.

18. Plaintiff SULLIVAN complained to her supervisor, Mr. Davis, about this disparate treatment and the hostile work environment she was subjected to on a daily basis. However, again, neither Mr. Davis nor any other supervisor rectified the situation. On the contrary, Mr. Davis would become upset when Plaintiff SULLIVAN complained to him.

## HEALTH, SAFETY, AND OTHER VIOLATIONS

19. Although Plaintiff SULLIVAN is not claiming actual damages for health and safety violations, Plaintiff SULLIVAN was terminated at least in part as retaliation for reporting health and safety violations, as well as other violations.

20. Almost immediately after Plaintiff SULLIVAN began her employment at Defendant COLUMBUS MGT, she noticed that critical health and safety notices were not being provided to tenants of Defendant COLUMBUS MGT, as required by health and safety laws. For

4

instance, fire safety plans (which were never filled out by Defendant COLUMBUS MGT) or disclosures of bed bug infestation history were not provided to tenants.

21. In addition to health and safety violations, Plaintiff SULLIVAN noticed that Defendant COLUMBUS MGT was intentionally disregarding rent stabilization regulations to improperly increase rent for new tenants. Instead of following rent stabilization protocols, Defendant COLUMBUS MGT would manipulate previous leases to make it appear that a previous tenant had renewed their lease when in fact they had not, thereby increasing the rent for new tenants based on a higher rate as opposed to the actual legal regulated rent from the previous tenant.

22. Defendant COLUMBUS MGT was also violating New York State Division of Housing and Community Renewal (hereinafter "DHCR") by collecting excessive security deposits from tenants. While DHCR regulations limit security deposits to an amount equal to one or two months rent, pursuant to laws applicable at the time the leases was signed, Defendant COLUMBUS MGT was collecting security deposits from tenants in amounts well over the legally imposed limit.

23. In one instance, a security deposit of $20,409.18 was collected from a tenant who paid $3,401.53 per month for rent. Despite having paid this amount, the accounting done by Defendant COLUMBUS MGT only reflected a security deposit in this tenant's account of $3,401.53 in order to hide this intentional violation of 421-A protocols.

24. Moreover, Defendant COLUMBUS MGT was providing preferential rent to tenants who were the first tenants in individual apartments, despite this policy being in direct violation of Defendant COLUMBUS MGT's acceptance of 421-A government benefits.

25. In addition to the above-mentioned violations, Plaintiff SULLIVAN noticed several other unethical actions. For instance, she was told that a client, Mandell School, had paid $83,333 as a security deposit. However, Plaintiff SULLIVAN never received a copy of the check or of the deposit slip, and when she asked her supervisor Mr. Davis for the information, he responded that the $83,333 might have been paid in cash. Plaintiff SULLIVAN never received complete and accurate information about this security deposit, nor did she receive any accurate information about similar money issues she inquired about with her supervisor Jeffrey Davis and colleague Ifeta Ljesjanin. Upon information and belief, this money was never "located."

**RETALIATION**

26. In December 2010, Plaintiff SULLIVAN was reassigned from Lease Administrator to Accounts Receivable, although she still did the majority of the work that was classified under the job description of Lease Administrator. This demotion in title was not only demeaning but no longer encompassed Plaintiff SULLIVAN's actual job duties as Lease Administrator, which job she was still performing. Her old job title of Lease Administrator was given to Sun Yi, the same person Plaintiff SULLIVAN complained about to her supervisor for creating a hostile work environment and for discriminatory behavior. This demotion in title was retaliatory, based only on Plaintiff SULLIVAN's complaints about hostile work environment, race discrimination and is evidenced by the fact that Plaintiff SULLIVAN was still required to perform almost all of her old job duties as well as new responsibilities, with no increase in pay whatsoever.

27. After her complaints to Mr. Davis went wholly unanswered, in May 2011 Plaintiff SULLIVAN complained to directly to Defendant CHETRIT via email about the hostile work

environment, the discriminatory treatment, and disparate treatment she was enduring in the workplace. Plaintiff SULLIVAN never received any response to her complaint of hostile work environment, race discrimination, and disparate treatment and nothing was done to address it.

28. Additionally, in the same email, Plaintiff SULLIVAN addressed her grave concerns regarding Defendant COLUMBUS MGT's health and safety violations.

29. Plaintiff SULLIVAN did this because nothing was being done by Mr. Davis or any other supervisor, and Plaintiff SULLIVAN felt these issues were urgent. Plaintiff SULLIVAN did not receive any response, and nothing was done to correct the situation.

30. However, on July 12, 2011, when Plaintiff SULLIVAN returned from her vacation, she was summarily terminated with no explanation.

31. Prior to this point, Plaintiff SULLIVAN's work ethic and performance had never been called into question by her supervisors or management within Defendant COLUMBUS MGT.

32. Plaintiff SULLIVAN was subjected to a hostile work environment, was discriminated against due to her race and her complaints about health and safety violations, and was wrongfully terminated in retaliation for making those complaints.

## FIRST CAUSE OF ACTION
### Title VII - Race Discrimination, Disparate Treatment, Hostile Work Environment, and Retaliation

33. Plaintiff SULLIVAN repeats and realleges each and every allegation contained in paragraphs "1" through "32" with the same force and effect as if separately alleged and reiterated herein.

34.     Defendant COLUMBUS MGT subjected Plaintiff SULLIVAN to race discrimination, disparate treatment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

35.     As a result, Plaintiff SULLIVAN suffered damages for past and future earnings, other employment benefits, attorney's fees, and emotional injuries in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**New York City Human Administrative Law - Race Discrimination, Disparate Treatment, Hostile Work Environment, and Retaliation**

36.     Plaintiff SULLIVAN repeats and realleges each and every allegation contained in paragraphs "1" through "32" with the same force and effect as if separately alleged and reiterated herein.

37.     Defendants COLUMBUS MGT and CHETRIT subjected Plaintiff SULLIVAN to race discrimination, disparate treatment, hostile work environment, and retaliation in violation of the New York City Human Administrative Code § 8-101, *et seq*.

38.     As a result, Plaintiff SULLIVAN suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**New York City Human Administrative Law – Aiding and Abetting**

39.     Plaintiff SULLIVAN repeats and realleges each and every allegation contained in paragraphs "1" through "32" with the same force and effect as if separately alleged and reiterated herein.

40. Defendant CHETRIT willfully and consciously aided and abetted the race discrimination, disparate treatment, hostile work environment, and refused to rectify the pervasive discrimination in the workplace, despite being responsible for doing so.

41. Defendant CHETRIT subjected Plaintiff SULLIVAN to further national origin discrimination, hostile work environment, and disparate treatment in violation the New York City Human Administrative Code § 8-101, *et seq*.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(i) On the First Cause of Action, actual damages to be determined at trial, but in no event less than $1,000,000;

(ii) On the Second Cause of Action, actual damages to be determined at trial, but in no event less than $1,000,000;

(iii) On the Third Cause of Action, actual damages to be determined at trial, but in no event less than $1,000,000;

(iv) Punitive damages;

(v) Attorneys' fees, disbursements and other costs; and

(vi) Such other and further relief which the Court deems just and proper.

Dated:   New York, New York
         February 15, 2012

By: _____
Walker G. Harman, Jr., Esq. [WH-8044]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
200 West 57th Street, Suite 900
New York, New York 10019
212-425-2600